UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORINA FALL,<br>    Plaintiff,<br><br>v.<br><br>WARDEN STOVER, FCI DANBURY,<br>    Respondent. | Case No. 3:24-cv-1176 (OAW) |

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Corina Fall, incarcerated at the Federal Correctional Institution at Danbury, Connecticut, filed this *pro se* Emergency Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the Bureau of Prisons' ("BOP") application of her First Step Act ("FSA") earned time credits. In response to the court's order to show cause, Respondent, the Warden of FCI Danbury, contends that BOP has properly calculated all of Petitioner's earned time credits. The court has reviewed the petition, ECF No. 1, the response, ECF No. 13, and Petitioner's replies, ECF Nos. 14, 15, 16. For the following reasons, the court agrees with Respondent and thus **DENIES** Petitioner's Emergency Petition for a Writ of Habeas Corpus.

**I.     BACKGROUND**

Petitioner was convicted in the District of Maine of Conspiracy to Distribute Over 500 Grams of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. ECF No. 13-2 at 1. She was sentenced to 90 months' imprisonment and five years' supervised release on September 13, 2021. *See id.* at 1–3. Petitioner began serving her

1

90-month sentence at the Federal Prison Camp in Danbury, CT. *See* ECF No. 1 at 1–2. Her full-term release date, which includes 319 days of credit for time served in custody prior to sentencing, is April 27, 2028. ECF No. 13-3 at 2. As of August 6, 2024, Petitioner has earned and is projected to earn 404 days of good conduct time ("GCT"). *Id.* Her projected release date after earned and projected GCT is applied is March 20, 2027. *Id.*

Petitioner also began accruing credits under the First Step Act ("FSA") when her sentence began on September 13, 2021. She has earned 365 days of FSA credits, the maximum allowed by statute to be applied to her supervised release. *See* ECF No. 13-3 at 1; 18 U.S.C. § 3624(g)(3). Once eligible to apply these FSA credits, her projected release date will be March 20, 2026. *See* ECF No. 13-3 at 1. Petitioner has also earned an additional 115 days of FSA credits that will apply to pre-release community placement. ECF No. 13-4 at 1. Assuming she does not lose any GCT or FSA credits, her pre-release community placement date is November 25, 2025. *See* ECF No. 13 at 5 n.5 (deriving this date by subtracting 115 days from her March 20, 2026, FSA release date). Respondent notes this date can change based on earned or lost credits. *See id.* at 5–6.

Petitioner filed an Emergency Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on July 9, 2024. ECF No. 1 at 1. She maintains that if her FSA credits were calculated correctly and she is eligible for 365 days of Second Chance Placement, she should have been eligible for home confinement or halfway house placement around January 28, 2024. *See* ECF No. 1 at 3; ECF No. 16 at 1. Therefore, she seeks a court order to recalculate her sentencing credits so she can be released to home confinement or to a halfway house. *See* ECF No. 1 at 3. Respondent objects. ECF No. 13.

## II. **LEGAL STANDARD**

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of [her] sentence, but challenges instead its execution subsequent to [her] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, a petition under Section 2241 is the appropriate vehicle for challenging the computation of a prisoner's sentence or prison officials' imposition of disciplinary sanctions, including the loss of good-time credits. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (citations omitted). Petitioner "bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III. **DISCUSSION**

The FSA encourages federal inmates to participate in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs") by providing time credits to an inmate who successfully completes such programs. *See* 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.40(b); *Dailey v. Pullen*, WL 3456696, at *2 (D. Conn. May 15, 2023). An inmate classified as minimum or low risk of recidivism earns either ten or fifteen days of FSA time credits for every thirty days of successful participation in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A). Application of these credits enables an inmate to

3

transfer to prerelease custody (on home confinement or to a residential reentry center ("RRC")), or to discharge to her term of supervised release, prior to the completion date of her sentence.  *See* 18 U.S.C. §§ 3624(g)(2) and (3); 18 U.S.C. § 3632(d)(4)(C); *see also Saleen v. Pullen*, WL 3603423, at *1 (D. Conn. Apr. 12, 2023) ("Prerelease custody can be in the form of either home confinement or transfer to a residential reentry center."). But if a defendant's sentence includes supervised release, as Petitioner's does, *see* No. 13-2 at 3, the term of prerelease placement cannot exceed twelve months.  *See* 18 U.S.C. § 3624(g)(3).

Though an inmate may *earn* FSA credits throughout her term of imprisonment, she may not immediately *apply* them to reduce her term of imprisonment unless certain conditions are met.  *See Clark v. Jamison*, WL 7300582, at *1 (D. Conn. Nov. 6, 2023) (noting that "the FSA considers situations where an inmate is eligible to earn Time Credits but cannot have those credits applied to reduce his sentence.").  Only when an inmate has earned FSA time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," and when certain other requirements are met, may the BOP apply the FSA credits toward the inmate's early release.  18 U.S.C. § 3624(g)(1)(A). In other words, the inmate is not eligible for application of her FSA time credits until the number of credits equals the number of days remaining on her sentence.  *See id.*; *Dailey*, 2023 WL 3456696, at *4 ("As a result, although an individual may earn FSA time credits on an on-going basis, the individual is not eligible to have FSA credits applied until the time credits are equal to the individual's pending term of imprisonment.").  Such is the case here.

Petitioner has earned 480 days of FSA credits (365 days of FSA credits can be applied to supervised release, and 115 to pre-release community placement). *See* ECF No. 13-4 at 1. But her statutory projected release date, applying only GCT credits, is March 20, 2027—some 877 days from October 24, 2024. Because her FSA credits (480) do not yet equal the remainder of her sentence (877 days), she cannot apply her earned FSA credits to reduce her sentence. As her FSA credits continue to accrue (assuming she continues her programing and does not lose any credits), and her remaining sentence continues to shrink, the difference between her FSA credits and the time left on her sentence will be reduced. Once Petitioner's FSA credits meets or exceeds the number of days left on her sentence, the FSA credits will apply, and Petitioner's sentence will be reduced by her FSA credits. Petitioner has not yet reached that point.

Petitioner states "she *will* earn a total of 780 days of FTC," ECF No. 1 at 3 (emphasis added), which suggests she should receive FSA credits for future programming not yet completed. But only "[a] prisoner…who *successfully completes* evidence-based recidivism reduction programming or productive activities, shall earn time credits…" 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Thus, future or incomplete programming does not generate FSA credit, and therefore cannot reduce a sentence, *see* 18 U.S.C. § 3624(g)(1)(A), as Petitioner incorrectly claims. *See* ECF No. 1 at 3.

Petitioner also suggests the Second Chance Act entitles her to an earlier release. *See* ECF No. 1 at 3; ECF No. 16 at 1. "The Second Chance Act doubled the maximum pre-release placement period from six to twelve months, required the BOP to make RRC placement decisions on an individual basis and to ensure that 'the duration of the RRC

5

placement period gives the inmate the greatest likelihood of successful community reintegration.'" *United States v. De La Cruz*, WL 733776, at *2 (D. Conn. Feb. 12, 2020) (quoting *Owusu-Sakyi v. Terrell*, WL 3154833, at *2 (E.D.N.Y. Aug. 9, 2010)). But RRC placement under the Second Chance Act is within the sole discretion of BOP. *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009) (noting "the BOP 'retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC, provided such pre-release confinement is practicable and the BOP considers the statutory factors.'") (internal citations omitted). Therefore, the court cannot order BOP to place Petitioner in a residential re-entry center. *See Milchin v. Warden*, WL 1658836, at *1 (D. Conn. May 25, 2022) (noting "that the court cannot order BOP to transfer [a prisoner] to home confinement, as that decision rests solely with BOP.").

## IV.    CONCLUSION

Because Petitioner has not met her burden of proving by a preponderance of the evidence that she is being held contrary to law, *Skaftouros*, 667 F.3d at 158, her Emergency Petition for a Writ of Habeas Corpus, ECF No. 1, must be **DENIED.**

IT IS SO ORDERED at Hartford, Connecticut, this 24th day of October, 2024.

                                                            /s/
                                        Omar A. Williams
                                        United States District Judge